```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT ALLEN EDWARDS           :    CIVIL ACTION
                               :
          v.                   :
                               :
PA. BD. OF PROB. & PAROLE,     :
    et al.                     :    NO. 05-6687
```

MEMORANDUM

Dalzell, J.                                     February 6, 2007

In this § 1983 action, Robert Allen Edwards seeks declaratory and injunctive relief against the Pennsylvania Board of Probation and Parole and its members (collectively the "Board"). He claims that he has been denied parole in retaliation for the exercise of his constitutional rights, that his recommitment was a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, and that the application of 1996 statutory amendments to his case is a violation of the Ex Post Facto Clause. The parties have filed cross-motions for summary judgment, which we address here.[1]

---

[1] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  It appears that the parties agree on all material issues of fact and only questions or law or the application of law to facts are at issue in this case.  This case is, therefore, ideally situated for resolution at the summary judgment stage. In resolving a motion for summary judgment, the Court must draw all reasonable inferences in the non-movant's favor, Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir. 1999), and determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**Facts**

In 1973, a Pennsylvania jury convicted Robert Allen Edwards of first degree murder and aggravated robbery for his role in the hold-up of a Philadelphia gas station. Although Edwards was standing outside the gas station while two of his friends entered the gas station to rob it, the jury found him guilty as an accomplice because he provided his jacket to one of the friends to conceal the gun and because he disposed of the gun after the owner of the gas station was fatally shot. As Pennsylvania law required, the court sentenced him to life imprisonment for the murder and a concurrent ten to twenty year term for the robbery. Both of Edwards's accomplices pled guilty to second degree murder and aggravated robbery and received sentences of twenty to forty years.

During its June, 1983 session, the Pennsylvania Board of Pardons considered Edwards's request for commutation of his sentence. In view of the disparity in sentencing between Edwards and his more culpable accomplices, and impressed by his record while in prison,[2] the Board of Pardons recommended to Governor Richard Thornburgh that Edwards's sentence be commuted. On April 12, 1984, Governor Thornburgh signed an order commuting Edwards's sentence from mandatory life to 15 years to life. Under Pennsylvania law, this made Edwards eligible for parole on February 21, 1988. The order stated that "if he be released on parole in accordance with law he shall remain on parole the

---

[2] Edwards had completed his GED and seven college-level courses. He was also an active participant in a non-recidivism program for juveniles who entered the state correctional system.

balance of his natural life unless returned to the correctional institution for violation of parole." Def. Mot., app. II, at 4.

On February 3, 1988, the Board of Probation and Parole determined that Edwards would be released on parole on February 21, 1988, the first day on which he was eligible. The parole order stated that Edwards would remain under the jurisdiction of the Board until the expiration of his maximum term, which was life.

A year later, on or about February 20, 1989, Edwards moved from his approved residence, a violation of one of his conditions of parole. He was arrested on March 9, 1989, after a parole agent became aware that he had moved and, after a hearing, was recommitted to SCI-Graterford for nine months. Due to a delay in posting bail, Edwards's recommitment time was not completed until August 29, 1990. On October 23, 1990, he was again released on parole.

Between 1992 and 1995 Edwards committed a series of non-violent crimes including wire fraud, bank fraud, money laundering, and counterfeiting. He pled guilty to indictments in both the Western District of Virginia and the Eastern District of Pennsylvania. The Virginia district court sentenced him to 30 months in prison and our colleague, Judge Ludwig, sentenced him to 84 months. These crimes were, of course, violations of Edwards's Pennsylvania parole. See 61 Pa. C.S.A. § 331.21a(a). On July 28, 2003, after his release from federal custody, the Board revoked his parole and recommitted him to state prison.

In June, 2005, the Board considered Edwards for reparole, but refused to grant it, citing his "lack of remorse for the offense(s) committed" and his "prior history of supervision failure(s)."  Def. Mot., app. II at 41.  On August 31, 2006, the Board again denied Edwards reparole because of his "minimization of the nature and circumstances of the offense(s) committed," "the negative recommendation made by the Department of Corrections," and once again his "prior history of supervision failure."  Id. at 43.  The Board concluded by advising Edwards, "you will serve your unexpired maximum sentence of life."  Id.

**Edwards's Claims**

On October 6, 2006, Edwards filed an amended complaint, which expanded his original claims to include the Board's August 31, 2006 denial of reparole.  We granted Edwards leave to amend and the current motions deal with the amended complaint.

Edwards advances three claims in his amended complaint.  Count I alleges that the Board refused to reparole Edwards on August 31, 2006 in retaliation for his filing of this suit rather than for any "legitimate non-retaliatory penological reasons."  Compl. ¶ 33.  Count II asserts that the Board's reimposition of Edwards's unexpired life sentence for his parole violation is cruel and unusual punishment in violation of the Eighth Amendment.  Count III avers that the Board's reimposition of Edwards's unexpired life sentence violated the Ex Post Facto

Clause of Article I of the Constitution.³  We will address these claims in reverse order.

**Ex Post Facto Claims**

Edwards asserts that the Board's reimposition of his unexpired sentence violates the Ex Post Facto Clause of Article I of the Constitution.  The Ex Post Facto Clause "applies to a statute or policy change which 'alters the definition of criminal conduct or increases the penalty by which a crime is punishable.'"  Richardson v. Pa. Bd. of Prob. & Parole, 423 F.3d 282, 287 (3d Cir. 2005) (quoting Ca. Dep't of Corr. v. Morales, 514 U.S. 499, 503 n.3 (1995)).  Pennsylvania law makes it clear, however, that although parole is an alteration of the terms of confinement, a parolee continues to serve his unexpired sentence until its conclusion.

> A parole is not an act of clemency but a penological measure for the disciplinary treatment of prisoners who seem capable of rehabilitation outside of prison walls; it does not set aside o[r] affect the sentence and the convict remains in the legal custody of the state and under the control of its agents, subject at any time for breach of condition, to be returned to the penal institution.  A prisoner on parole is still in the legal custody of the warden of the institution from which he was paroled and he is under the control of the warden until expiration of the term of his sentence. While this is an amelioration of the punishment, it is in legal effect an imprisonment, and a parolee may be

---

³ Although not mentioned in the amended complaint, Edwards has argued in the past, and continues to argue in his memoranda, that the Board applied the 1996 amendments to Title 61 of the Pennsylvania Statutes to his reparole in violation of the Ex Post Facto Clause.  In the interest of completeness, we will address that claim as well.

>   apprehended for a parole violation without
>   any warrant being issued for his arrest.

Commonwealth ex rel. Sparks v. Russell, 169 A.2d 884, 885 (Pa. 1961).  When it denied Edwards reparole, therefore, the Board did not, in any legal sense, reimpose Edwards's life sentence.[4]  Rather, it found that Edwards was not suited to serving that sentence outside of a penal institution.

To be sure, "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of [the Ex Post Facto Clause]."  Garner v. Jones, 529 U.S. 244, 250 (2000).  But the relevant Pennsylvania statutes have, since well before 1973, granted the Board the discretion to recommit a parole violator to prison.  61 Pa. C.S.A. § 331.21a(a).  The relevant statute states that, once a prisoner is recommitted, "he shall be reentered to serve the remainder of the term which said parolee would have been compelled to serve had he not been paroled, and he shall be given no credit for the time at liberty on parole."  Id.  Once recommitted, the prisoner may be reparoled only at the discretion of the Board.  Id.  Contrary to Edwards's contention, there is not now, and has never been under Pennsylvania law, a right to reparole prior to the completion of

---

[4] Edwards claims that because the commutation order said "if he be released on parole in accordance with the law he shall remain on parole the balance of his natural life," Def. Mot., app. II, at 4, the Board was without authority to revoke his parole.  Edwards, who quotes this section repeatedly in his materials, consistently leaves out the second part of that sentence:  "unless returned to the correctional institution for violation of parole."  Id.  Taken as a whole, the sentence is unambiguous.  Once he was convicted as a parole violator, Edwards had no protected liberty interest beyond that of any other prisoner who is eligible to be considered for parole and is serving out the remainder of his maximum sentence.

the unexpired original sentence.  See, e.g., Counts v. Pa. Bd. of Prob. & Parole, 487 A.2d 450, 453 (Pa. Cmwlth. 1985) overruled on other grounds by Reider v. Pa. Bd. of Prob. & Parole, 514 A.2d 967 (Pa. Cmwlth. 1986) ("The Board's recommitment order revoking his parole and mandating that he serve backtime stripped him of his status as a parolee whereby he lost his constitutionally-protected liberty interest.  The tentative reparole date set by the Board is the administrative equivalent of a recomputed minimum term and only sets a new parole eligibility date, it does not vest any right to a grant of parole upon reaching that date.").

  The 1988 deletion of 37 Pa. Code § 71.4(9) also does not pose an Ex Post Facto problem.  That section required that, when a parole revocation was ordered, "the board will state the date for reparole reconsideration, if applicable."  This deletion simply does not create "a sufficient risk of increasing the measure of punishment attached to the covered crimes" to raise Ex Post Facto concerns.  Morales, 514 U.S. at 509.  First, the Board was only required to state a reparole date "if applicable."  Second, even if such a date was set, it was merely a date for "reparole reconsideration."  Third, and most importantly, a prisoner or his attorney may still apply for parole at any time, and the Board must consider such a request if there has not been a parole decision within the past year.  There is, therefore, no reason to believe that the deletion of 37 Pa. Code § 71.4(9) will have any effect on the reparole of Edwards or any other convicted parole violator.

Although he does not address it in his amended complaint, Edwards's motion for summary judgment rehashes his oft-litigated claim that the 1996 modifications to the Parole Act violated the Ex Post Facto Clause as to him.  Although this issue has already been litigated to conclusion in both the state and federal courts, we will, in the interest of complete and final resolution of Edwards's claims, treat it briefly here.

In 1996, in response to the murder of a policeman by a paroled prisoner, the Pennsylvania legislature adopted amendments to the preamble of the Parole Act.  These modifications required that, in making parole decisions, "the board shall first and foremost seek to protect the safety of the public."  61 Pa. C.S.A. § 331.1.  Both state and federal courts have recognized that, with regard to prisoners whose offense conduct was complete before 1996, this change has the potential to violate the Ex Post Facto Clause.  See Richardson, 423 F.3d at 291; Cimazewski v. Pa. Bd. of Prob. & Parole, 868 A.2d 416 (Pa. 2005).  Citing this line of cases, Edwards claims that the Board's denial of his reparole was in violation of the Ex Post Facto Clause.

We begin by noting that the issue of whether the Board's denial of Edwards's reparole violated the Ex Post Facto Clause has been litigated to judgment in both the state and federal courts.  See Edwards v. Pa. Bd. of Prob. & Parole, Case No. 2153 CD 2003 (Pa. Cmwlth. 2003); Edwards v. Pa. Bd. of Prob. & Parole, C.A. No. 05-6307 (E.D. Pa. 2006) (Ludwig, J.).  Under federal law, a party is precluded from raising an issue in subsequent litigation when "(1) the issue sought to be precluded

8

[is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." In re Graham, 973 F.2d 1089, 1097 (3d Cir. 1992) (internal quotation omitted).  That Edwards has appealed Judge Ludwig's 2006 judgment does not affect its preclusive effect in this case.  Rice v. Dep't of the Treasury, 998 F.2d 997, 999 (Fed. Cir. 1993).

   Edwards claimed in his habeas corpus action before Judge Ludwig that the Board had denied his reparole because of the 1996 amendment and that, therefore, the denial was in violation of the Ex Post Facto Clause.  That is the same claim he makes here.  In denying Edwards's habeas petition, Judge Ludwig adopted Judge Hart's Report and Recommendation, which specifically rejected Edwards's Ex Post Facto claim.  As he does here, Edwards sought to analogize his case to Mickens-Thomas v. Vaughn, 321 F.3d 374 (3d Cir. 2003) in which our Court of Appeals found that the Board's denial of Mickens-Thomas's parole was an Ex Post Facto violation.  Judge Hart specifically distinguished Edwards's case from that of Mickens-Thomas.  Edwards is not entitled to relitigate that issue here.  Judge Ludwig's resolution of the issue binds us.

   Even were Edwards not estopped from raising this already-litigated issue, we would hold -- as did the other courts that have addressed this question -- that the Board's decision was not an Ex Post Facto violation.  Richardson specifically refused to find that application of the current Parole Act to

9

pre-1996 prisoners was a per se Ex Post Facto violation.[5]  423 F.3d at 291.  Instead, the court found that "the ultimate question is the effect of the change in parole standards on the individual's risk of increased punishment."  Id.  A prisoner must "adduce some evidence that this new law or policy disadvantaged him by creating 'a significant risk of increasing his punishment.'"  Id. at 292 (quoting Garner, 529 U.S. at 255).  Unlike Mickens-Thomas, where the Board made evident that it was denying parole for reasons of public safety, Edwards's parole denials make no mention of public safety.  Instead, they cite factors such as prior parole failures and lack of remorse whose relative weight in the parole calculus the 1996 amendments did not change.  Edwards has produced no evidence that the change in the Parole Act had any effect on the Board's decision in his case.  The Board's decision, therefore, does not violate the Ex Post Facto Clause.

      Both because Edwards's Ex Post Facto claims are barred by the doctrine of res judicata and because they are insufficient on the merits, we will grant defendants' motion as to these claims.

---

[5] Such a finding would, of course, wreak havoc with the parole system since it would effectively mean that every prisoner convicted before 1996 would be entitled to parole at the earliest opportunity.

**Eighth Amendment Claim**[6]

Edwards's Eighth Amendment claim is that life imprisonment for a non-violent parole violation constitutes cruel and unusual punishment. As we discussed above, Edwards is serving a life sentence not for his parole violation, but for his first degree murder conviction. Governor Thornburgh did not pardon Edwards; he merely commuted his mandatory life sentence. Edwards will, therefore, remain under the jurisdiction of the Pennsylvania penal system for the remainder of his life.[7] There is no question that a life sentence for first-degree murder does not violate the Eighth Amendment. See, e.g., Government of Virgin Islands v. Gereau, 592 F.2d 192 (3d Cir. 1979).

**Retaliation Claim**

Edwards's final claim is that the Board denied his reparole in retaliation for this suit and other suits challenging Board actions. "[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Allah v.

---

[6] The Board argues that, because Edwards contends that he must be released from custody, this claim may not be brought under Section 1983 but, even after Wilkinson v. Dotson, 544 U.S. 74 (2005), may only be brought as a habeas claim. Because we find that Edwards's claim fails on the merits, we do not reach this more difficult question.

[7] As we mentioned above, Edwards will continue to be eligible to seek reparole once per year under 61 Pa. C.S.A. 331.22. If reparole is granted, however, Edwards will still remain under the jurisdiction of the Board for the remainder of his unexpired sentence, that is to say, for the rest of his life.

11

Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)).  A prisoner's access to the courts is a constitutional right, Bounds v. Smith, 430 U.S. 817, 821 (1977), but only if it is predicated on a "nonfrivolous" and "arguable" underlying claim.  Christopher v. Harbury,  436 U.S. 403, 416 (2002). Although the Board argues that Edwards's underlying claims are frivolous, Edwards survived a motion to dismiss on at least one of his claims, see Order of July 6, 2006, Edwards v. Pa. Bd. of Prob. & Parole, C.A. No. 05-6687 (E.D. Pa. 2006) (reinstating Count I of Edwards's original complaint).  Although we do not hold that any claim surviving a motion to dismiss is per se nonfrivolous, in this matter, Edwards's underlying claim was at least colorable.[8]  Because we find that his underlying suit is not frivolous, it can be the basis for a retaliation claim. Edwards, therefore, crosses the first hurdle to his retaliation claim by showing that he was engaged in the exercise of a constitutional right.

     Edwards must next show that he suffered some "adverse action" that "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  Allah, 229 F.3d at 225 (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).  It would be difficult to argue, and the Board does not do so, that denial of parole would not constitute such an

---

[8] When Edwards filed this suit, Judge Ludwig had not yet ruled on his Ex Post Facto claim, so res judicata did not yet bar that claim.

adverse action.  See, e.g., Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Finally, Edwards must prove a causal link between his exercise of his right of access to the courts and his denial of parole.  Our Court of Appeals has imported the burden shifting framework of Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274 (1974) into the prison context.  See Rauser, 241 F.3d at 333-34. Edwards must, therefore, make an initial showing that his lawsuit was a "substantial or motivating factor" in the Board's decision to deny his reparole.  Id. at 333.  Edwards produces no evidence that the Board was even aware of his lawsuit at the time of its decision, much less that it was a substantial factor in their decision.  In fact, the only record evidence addressing this issue -- other than the voting sheet, which makes no mention of the suit -- is the declaration of Board member Benjamin A. Martinez that he does not recall whether he was aware of the suit, but that it did not influence his vote.  Martinez Decl. ¶ 11.  We find, therefore, that Edwards has not met his burden to produce evidence that his exercise of a constitutional right was a motivating factor in his denial of reparole.[9]

---

[9] Even were we to find that Edwards had met his initial burden of production, we would still deny his claim.  After a plaintiff's initial showing, the burden shifts to the defendant to show, by a preponderance of the evidence, that it would have made the same decision even without plaintiff's exercise of his constitutional right.  Rauser, 241 F.3d at 333.  Here, there is ample evidence supporting that contention, namely the Board's 2005 denial of reparole, which occurred before this lawsuit was filed.

**Discovery Motion**

Also pending in this matter is Edwards's motion to compel disclosure of the redacted portions of the Board's 1987 summarization report. In response to that motion, the Board submitted an unredacted copy of the report for <u>in camera</u> review. Because we find that the redacted portions, even if considered, would not in any way modify our conclusions, we will deny Edwards's motion.

**Conclusion**

The only disputed question of material fact in this case is the ultimate question of whether the Board acted in retaliation for Edwards's lawsuit when it denied him reparole in August of 2006. Because we find that no reasonable jury could find for Edwards on that claim and because Edwards's other claims fail as a matter of law on the undisputed facts, we will enter summary judgment for the defendants.

BY THE COURT:

<u>/s/ Stewart Dalzell, J.   </u>

```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT ALLEN EDWARDS         :    CIVIL ACTION
                             :
          v.                 :
                             :
PA. BD. OF PROB. & PAROLE,   :
   et al.                    :    NO. 05-6687
```

## ORDER

AND NOW, this 6th day of February, 2007, upon consideration of the parties' cross-motions for summary judgment (docket entries 45 & 49), plaintiff's motion for order compelling disclosure (docket entry # 50) and the parties' responses to those motions (docket entries 48, 51, & 52), and for the reasons articulated in the accompanying Memorandum of Law, it is hereby ORDERED that:

    1.   Plaintiff's motion for order compelling disclosure is DENIED;

    2.   Plaintiff's motion for summary judgment is DENIED;

    3.   Defendants' motion for summary judgment is GRANTED; and

    4.   The Clerk of Court shall CLOSE this matter statistically.

BY THE COURT:

/s/ Stewart Dalzell, J.

```
                  IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT ALLEN EDWARDS              :      CIVIL ACTION
                                  :
         v.                       :
                                  :
PA. BD. OF PROB. & PAROLE,        :
    et al.                        :      NO. 05-6687
```

JUDGMENT

AND NOW, this 6th day of February, 2007, the Court having today granted defendants' motion for summary judgment, JUDGMENT IS ENTERED in favor of defendants Pennsylvania Board of Probation and Parole, Benjamin Martinez, Michael L. Green, Gerard N. Massaro, Allen Castor, Jeffrey R. Imboden, Gary R. Lucht, Sean R. Ryan, Michael M. Webster, Lloyd A. White, Barbara K. Descher, Nicholas P. Muller, and Catherine C. McVey and against plaintiff Robert Allen Edwards.

BY THE COURT:

/s/ Stewart Dalzell, J.